408

516 A.2d 814

Millstone Enterprises, Inc., and William R. Birdseye, Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, and Township of South Huntingdon, Westmoreland County, Pa., Respondents.

Millstone Enterprises, Inc., and William R. Birdseye, Appellants *v.* Township of South Huntingdon, Westmoreland County, Pa., Appellee.

Argued June 10, 1986, before Judges MacPhail and Doyle, and Senior Judge Rogers, sitting as a panel of three.

*Thomas A. Crawford, Jr.,* for petitioners/appellants.

*John W. Pollins, III,* with him, *Frank P. Anto,* for respondent/appellee, Township of South Huntingdon.

*Dennis W. Strain,* Assistant Counsel, with him, *Gary A. Peters,* Assistant Counsel, for respondent, Department of Environmental Resources.

OPINION BY JUDGE MACPHAIL, October 22, 1986:

Millstone Enterprises, Inc. and William R. Birdseye (Millstone), in the case docketed at No. 3080 C.D. 1985, appeal a decision of the Westmoreland County Court of Common Pleas entered on November 12, 1985 which dismissed their exceptions and made final the February 4, 1985 order of that Court which granted an injunction requested by the Township of South Huntingdon. We will affirm that order. In the case docketed at No. 73 C.D. 1986[1], Millstone has filed a "Petition for a Writ of Mandamus" against the Township and the Department of Environmental Resources (DER).[2] Both DER and the Township have filed preliminary objections to

---

[1] Although these cases were not consolidated by formal order of this Court, we will address the issues raised in one opinion inasmuch as both cases arise from the same factual background and involve the same parties.

[2] The Pennsylvania Rules of Appellate Procedure provide that appeals and actions in mandamus, as well as those in equity, replevin, quo warranto, declaratory judgments, and petitions for writs of certiorari and prohibition, dealing with governmental unit determinations, have been replaced with a single form of action known as a "petition for review." Pa. R.A.P. 1501, 1502; *Commonwealth, Auditor General v. Borough of East Washington,* 474 Pa. 226, 378 A.2d 301 (1977). It would appear that Millstone should have properly filed a petition for review in the nature of a petition for a writ of mandamus addressed to our original jurisdiction. However, as our Supreme Court noted in *Borough of East Washington,* Pa. R.A.P. 1503 provides that "[a]ctions brought in the wrong form should not be dismissed, but should be regarded as having been filed in the proper form. . . ." *Id.* at 231, 378 A.2d at 304. As such, we will consider the document filed by Millstone in No. 73 C.D. 1986 as a petition for review in the nature of a petition for a writ of mandamus addressed to our original jurisdiction.

Millstone's petition. We find that at least some of those preliminary objections have merit and require that the petition be dismissed.

We will first address Millstone's appeal from the denial of its exceptions to the Common Pleas Court's order granting the Township's petition for an injunction.

Our scope of review in equity matters is limited to determining whether the Chancellor's findings are supported by substantial evidence, whether an error of law was committed, or whether the Chancellor abused his discretion. *Babin v. City of Lancaster*, 89 Pa. Commonwealth Ct. 527, 493 A.2d 141 (1985).

The pertinent findings of fact made by the Chancellor in his February 4, 1985 opinion which are supported by substantial evidence are as follows:

> 2. [Millstone is the owner] . . . of real estate in South Huntingdon Township, upon which a building has been constructed, which has been used, and is presently being used, as an 'adult book store.'
>
> 3. [Millstone] . . . installed a sanitary sewage holding tank on the subject property accompanying the erection of the building.
>
> 4. [Millstone] . . . did not apply for or receive a sewage permit for the sewage holding tank.
>
> 5. As of October 2, 1984, [Millstone's] . . . sanitary sewage holding tank was still connected to the flush toilet facilities in the building.
>
> 6. On or about October 2, 1984 [Millstone] . . . caused to be installed a portable toilet unit on the premises.
>
> 7. [Millstone] . . . does not have and has not applied for a sewage permit for the portable toilet.

8. [The] . . . Township has not ennacted [sic] an ordinance allowing for the use of holding tanks.

9. After the [Township's] Sewage Enforcement Officer, in response to anonymous complaints, discovered that [Millstone] . . . had installed the holding tank without a permit, [Millstone] . . . requested of him an application for a permit. The Sewage Enforcement Officer advised him that the property was located in a flood plane [sic] area and that accordingly a permit could not be issued.

. . . .

12. There is no municipal sewage disposal system in this area of South Huntingdon Township.

13. By a properly enacted resolution, the Commissioners of South Huntingdon Township designated Westmoreland County to develop a plan for sewage disposal in accordance with the Pennsylvania Sewage Facilities Act [(Act)[3]].

14. Westmoreland County's plan, adopted pursuant to the resolution, does not permit the use of a 'holding tank.'

The Chancellor entered an order which enjoined Millstone from occupying the building until a further order was issued upon proof of the issuance of a valid sewage permit under the Act. Millstone was also commanded to permanently disconnect the holding tank and to remove the portable toilet. On February 14, 1985, the Chancellor issued a stay of his order to allow time for Millstone's sewage application, which had just been filed with the Township, to be processed. On Au-

---

[3] Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§750.1-750.20.

gust 28, 1985, the Chancellor issued an order vacating the stay, "it appearing that [Millstone's] . . . administrative remedies before the Commonwealth of Pennsylvania, Department of Environmental Resources have been exhausted without the issuance of a sewage permit."

Millstone argues that the Township is not entitled to an injunction of any kind because it brought its case to an equity court without itself having done equity and with unclean hands. Millstone's argument centers on its allegations that the Township unfairly

> prevented [Millstone] . . . from obtaining a sewage permit by failing to plan for sewage disposal in appellants' area of the township, by refusing to let the appellants apply for a sewage permit, by eventually refusing to refer the appellants' application to the regional santition [sic], by discriminating against the appellants in granting and denying permits by selectively enforcing the sewage facilities act in order to close appellants' store, and by refusing to cooperate with appellants' offers to obtain a permit. . . .[4]

It is uncontroverted that the Township refused to give Millstone the proper application for a sewage permit for quite some time. Indeed, it did not do so until the hearing concerning the injunction was underway. There is, however, not a shred of evidence that this was based on anything more than a good faith belief by Township officers that a permit for any kind of a system could not be granted because the building was located on a floodplain. While we agree with Millstone that the Township did not meet its burden of proof at the hearing before the Chancellor that the building was located on a floodplain, we conclude that this finding is not cru-

---

[4] Appellant's Brief in No. 3080 C.D. 1985 at 8-9.

cial to the proper granting of an injunction. We also find that the breach by the Township of its duty to give Millstone an application does not prevent it from having an injunction granted.

Section 2 of the Act, 35 P.S. §750.2, includes the following definition:

'Individual sewage system' means a system of piping, tanks or other facilities serving a single lot and collecting and disposing of sewage in whole or in part into the soil or into any waters of this Commonwealth or by means of conveyance to another site for final disposal. . . .

The system Millstone had installed obviously falls under this definition because it was a holding tank which was periodically emptied and the contents trucked away.

Section 7(a) of the Act, 35 P.S. §750.7(a) states:

No person shall install, construct, or request bid proposals for construction, or alter an individual sewage system or community sewage system or construct, or request bid proposals for construction, or install or occupy any building or structure for which an individual sewage system or community sewage system is to be installed without first obtaining a permit indicating that the site and the plans and specifications of such system are in compliance with the provisions of this act and the standards adopted pursuant to this act.

Section 12(a) of the Act, 35 P.S. §750.12(a) grants the following means of enforcement:

Any local agency or any municipality which is a member of a local agency shall have the power to institute suits in equity to restrain or prevent violations of Section 7 of this act occurring within the jurisdiction or corporate limits of said local agency or municipality.

Further, DER regulations provide that

[t]he installation of any treatment tank, subsurface absorption area or any holding tank constitutes either the installation of an individual or a community sewage system and requires a permit prior to beginning the installation of the system or beginning the construction [,] installation or occupancy of any building or buildings for which such a system will be installed. For purposes of this section the installation of an individual or community sewage system shall include the repair, replacement or enlargement of any treatment tank, subsurface absorption area, or holding tank unless the Department determines that a permit is not required in a particular case.

25 Pa. Code §71.41(a).

While it may be true that the Township was dilatory in processing Millstone's request for an application, and while we do not condone the Township's inaction, the fact remains that Millstone did install the holding tank sewage system without ever having applied for a sewage permit. It is clear from the sections of the Act quoted above that the Township was entitled to an injunction from the moment that the system was first installed without the permit being granted.

Millstone asserts, however, that even if the Township is entitled to injunctive relief, the injunction is too broad in that it not only enjoins its use of the holding tank and the private toilet, but also prohibits it from occupying the building.

We keep in mind that injunctions should be issued only where the right of the plaintiff is clear to the remedy requested. *State Ethics Commission v. Landauer*, 91 Pa. Commonwealth Ct. 70, 496 A.2d 862 (1985). The decree should not go beyond the requirements of the

particular case, nor give to the favored party greater relief than that to which he is entitled by the nature and extent of his rights. *See Ranck v. Bonal Enterprises, Inc.,* 467 Pa. 569, 359 A.2d 748 (1976); *Liberty Corp. v. D'Amico,* 457 Pa. 181, 329 A.2d 222, *cert. denied,* 419 U.S. 1054 (1974).

Section 7(a) of the Act, 35 P.S. §750.7(a) prohibits anyone from "occupy(ing) any building or structure for which an individual sewage system . . . is to be installed without first obtaining a permit." Millstone clearly had no permit for its sewage system. The trial judge, therefore, acted in accord with the provisions of the statute by denying Millstone the right to occupy its building.

We conclude that the trial court's order granting the injunction must be affirmed in its entirety.

We now move to the issue of the preliminary objections to Millstone's Petition for a Writ of Mandamus, which we are considering as a petition for review in the nature of a petition for a writ of mandamus addressed to our original jurisdiction.

The petition names as parties both the Township and DER. The relevant paragraphs of the petition are as follows:

6. As Mr. Birdseye and Mr. Frank Cisilo [sic] were informed that no water or sewage facilities were available from the township system and no water and no sewage was put on the permit as is clear on exhibit C, the petitioners built a holding tank cistern system which they had pumped out and disposed of off-site by a commercial sanitary disposition firm.

7. During the early spring of 1983, Mr. Charles Dougherty, the South Huntingdon Township Sewage Officer, told one of petitioner Millstone Enterprises' tenant's employees that

the sewage system required a permit. Upon hearing that such was the case, petitioner William R. Birdseye contacted Mr. Dougherty, and had counsel contact Mr. Frank Anto the Township Solicitor regarding their willingness to do whatever was required to obtain the proper permit. . . .

8. The petitioners also ceased to use their installed cistern—holding tank system and converted to a portable chemical lavatory system such as those normally used at construction sites and continued to press Mr. Dougherty for application forms to obtain a permit.

9. Mr. Dougherty informed the petitioners that he would not supply application forms because the property was in a flood plane [sic] and he could approve no on site sewage disposal facility.

10. Counsel for the petitioners then notified Mr. Dennis Schwartzlander of the Department of Environmental Resources that the Township would not permit them to apply for the permit. . . .

11. Although Mr. Anto filed suit to enjoin the petitioners' occupancy of the property in a case now under appeal before this Honorable Court at No. 3080 C.D. 1985, the respondents continued to [not] even permit the petitioners to apply for a permit until ordered by the Court of Common Pleas of Westmoreland County to do so in early 1985.

12. On 8 February 1985 the petitioners applied for a permit for the holding tank—cistern system already installed. . . .

13. On 11 and 20 February 1985 Mr. Dougherty and the Township refused a permit to the petitioners. . . .

14. On 15 March 1985 the petitioners, through counsel, appealled [sic] the sewage officer's refusal to the Township's Board. . . .

15. A hearing was scheduled and the petitioners' appeal was denied on 10 May 1985. The Township refusing to inform the petitioners what sort of system of sewage disposal they would approve or permit. . . .

16. On 25 May 1985 the petitioners through counsel in accordance with page 68 ¶ 2 of the adopted Westmoreland County Plan (exhibit A, page 68) attempted to have the matter referred to the Regional Sanitary Engineer for determination of what sort of system would be permitted, proposing again the holding tank—cistern system already built. . . .

17. The respondent Department of Environmental Resources refused to act or refer the matter to the Department's office in Harrisburg as required by the Westmoreland Plan, informing the petitioners to submit a plan for a sewage treatment plant to the municipality again. . . .

18. On 16 August 1985 the petitioners employed engineer George L. Wick to prepare plans for a sewage treatment plant as suggested by the Department. The plan was submitted to the sewage officer, Mr. Daugherty [sic] on 24 September 1985, was refused on 27 September 1985 and immediately appealed to the Township's Board of Supervisors. . . .

19. A hearing was scheduled for 17 October 1985 and the appeal was denied. The denial was forwarded to the Department of Environmental Resources. . . .

20. To date the respondents have not issued a permit after almost three years and have

not informed the petitioners what type of system will be permitted.

We find that the preliminary objections of both DER and the Township must be granted on the basis that an adequate remedy is provided for in the Act.

As our Supreme Court recently said "where a statutory remedy is provided, the procedure prescribed therein must be strictly pursued to the exclusion of other methods of redress." *Jackson v. Centennial School District,* 509 Pa. 101, 105, 501 A.2d 218, 220 (1985). The Act clearly provides in Section 16, 35 P.S. §750.16, that a permit denial by a municipality is to be appealed under the provisions of the Local Agency Law, 2 Pa. C. S. §§551-555, 751-754. Further, the same section provides that any action taken by DER is to be appealed pursuant to the Administrative Agency Law, 2 Pa. C. S. §§501-508, 701-704. Millstone never appealed any denial of any permit to the courts, therefore it did not seek the remedy provided for in the Act. We cannot now entertain a proceeding in mandamus to accomplish what may have been accomplished by an appeal. *See Interstate Traveller Services, Inc. v. Department of Environmental Resources,* 38 Pa. Commonwealth Ct. 9, 391 A.2d 1112 (1978), *aff'd,* 486 Pa. 536, 406 A.2d 1020 (1979).

The Township has requested that we award it counsel fees in connection with Millstone's filing of its "Petition for a Writ of Mandamus" pursuant to Section 2503 of the Judicial Code, 42 Pa. C. S. §2503, Pa. R.C.P. No. 1035(f), Pa. R.A.P. 2744 and/or the inherent powers of this Court under common law. The Township asserts that Millstone's filing of the petition was "dilatory, obdurate or vexatious." We disagree. While Millstone may be incorrect in its assertion that it is entitled to a writ of mandamus, we do not see any evidence that the petition was filed in bad faith. It seems to have

come out of Millstone's frustration with its inability to get a permit from the Township. It must be remembered that while it is clear that Millstone did not follow the proper procedures in asserting its legal position, the Township is partially to blame for the current state of affairs due to its own dilatory behavior in failing to give Millstone a sewer permit application and act upon it so that the case could reach the correct procedural posture in the first place. We find that the Township's requests for counsel fees must be denied.

ORDER IN 73 C.D. 1986

The preliminary objections of the Department of Environmental Resources and the Township of South Huntingdon are sustained and the Petition for a Writ of Mandamus filed by Millstone Enterprises, Inc. is dismissed. The Township's request for counsel fees and costs is denied.

ORDER IN 3080 C.D. 1985

The order of the Common Pleas Court of Westmoreland County of November 12, 1985 dismissing exceptions filed to its previous order of February 4, 1985 and ordering that the latter order shall take effect, is affirmed.