**BROWNING–FERRIS INDUSTRIES, INC., New Morgan Landfill Company, Inc., and Conestoga Landfill, Petitioners,**

v.

## DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.

**Lisa and Steven Giordano, Petitioners,**

v.

**Department of Environmental Protection, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 13, 2002.

Decided March 13, 2003.

Alan K. Cotler, Pittsburgh, for petitioners, Browning–Ferris Industries, Inc., et al.

Kenneth L. Joel, Harrisburg, for petitioners, Giordano.

Martin R. Siegel, Harrisburg, for respondent.

Carl J. Engleman, Reading, for intervenor, Robeson Township.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

Browning–Ferris Industries, Inc., New Morgan Landfill Company, Inc. and Conestoga Landfill (Petitioners) petition for review of an order of the Environmental Hearing Board (EHB) that sustained the appeal of Lisa and Steven Giordano (Giordanos) and rescinded the permit modification granted to Petitioners by the Department of Environmental Protection (Department). The Giordanos have filed a cross-petition for review. The modification allowed the Conestoga Landfill (Landfill) to increase its average daily volume by 2,000 tons per day. The EHB rescinded the permit modification because, under a "harms/benefits" analysis, the harms and benefits of allowing the increase were balanced. The controlling issue in this case is whether increased fees paid to host municipalities may be considered an economic benefit when determining whether the benefits of a project clearly outweigh its known and potential environmental harms.

I

The Landfill is a municipal waste disposal facility located in a sparsely populated area of New Morgan Borough, Berks County. It received its original solid waste permit from the Department on June 24, 1992. That permit allowed the Landfill to accept a maximum daily volume of 10,000 tons of waste on any given day, but it limited the Landfill to an average daily volume of 5,210 tons per day over the course of a quarter of the calendar year. On August 14, 1998, Petitioners applied for

a permit modification to increase its average daily volume to 7,210 tons per day. The Department reviewed Petitioners' application under a harms/benefits test set forth in one of the Department's guidance documents. The Department approved and issued the permit modification on August 4, 1999.

The Giordanos' private residence is situated on property in Robeson Township (Robeson), approximately two miles downwind of the Landfill. They opposed the original permit granted to the Landfill and opposed the Landfill's application for the modification. The Giordanos timely appealed the Department's issuance of the permit modification to the EHB. The EHB allowed Robeson Township to intervene in the appeal, but it limited Robeson to the issues that had been previously raised by the Giordanos. On October 4, 2000, the EHB granted their motion for summary judgment and held that the Department had improperly relied upon the harms/benefits test when approving the permit modification. However, on December 23, 2000 amendments to the Department's municipal waste regulations went into effect, which adopted the harms/benefits test that was applied to Petitioners' modification request. Specifically, the amended regulations require applicants to "demonstrate that the benefits of the project to the public clearly outweigh the known and potential environmental harms." 25 Pa.Code § 271.127(c). All parties agreed that the EHB should apply the harms/benefits test set forth in the amended regulations to the instant case.

## II

After six days of hearings, the EHB entered an adjudication and order that sustained the Giordanos' appeal and rescinded the permit modification. The EHB agreed with the parties that under the circumstances applying the amended regulations was the only logical and fair course to take. Because the Landfill had been previously subjected to a complete environmental assessment, the EHB limited its focus to the subject of the modification and did not evaluate the harms and benefits of the Landfill as a whole. The effect of the modification is to increase the daily pace of operations and thereby shorten the Landfill's life span by an estimated two years. The EHB organized its harms/benefits analysis into the following categories: landfill capacity, disposal space availability, miscellaneous community and economic benefits, odors, other harms and host fees.

Concerning landfill capacity, the EHB found that thicker layers of waste reduced need for daily cover soil allowing more waste to be disposed of in the same amount of space. However, filling the landfill more quickly allows less time for the waste to settle and decompose, which reduces capacity. The EHB found that these two factors cancelled leaving no harm or benefit with regard to landfill capacity. Concerning disposal capacity, the EHB found that the modification makes more space available now but less space available in the future, and it concluded that the effect of the modification was neither a net harm nor a net benefit. Concerning miscellaneous community and economic benefits, the EHB found that the Landfill has provided numerous community and economic benefits,[1] but those benefits would not be significantly increased by

---

1. The benefits over the years and since the modification included, among others, participation in an adopt-a-highway program, an upgrade to Mineview Road, employment of 35 people, making road and drainage improvements and creation of a community environmental center. EHB Findings of Fact No. 84.

the modification. Concerning the odors, the EHB found that the malodors would cease sooner so that the net effect on malodors was neither a net harm nor a net benefit. Concerning other harms, the EHB found that the modification's effect on use of equipment, off-site litter, noise levels and vectors or birds was neither a net harm nor a net benefit. Concerning host fees, the EHB found that the volume increase results in faster payments that will end sooner and that the faster payment would increase the net present value of fees to Berks County and New Morgan Borough.

The EHB also specifically found, inter alia, that no traffic problems were reported since the volume increase took effect, that any increased noise and emissions would be minimal due to the short haul route, that no significant increase occurred in the inconvenience or danger from truck traffic and that no increase in off-site litter had resulted, except limited amounts on the Giordanos' property. With the exception of the increase in the net present value of the host fees paid to Berks County and New Morgan Borough, the EHB found that all of the harmful and beneficial effects of the modification would balance one another. The EHB rejected Petitioners' argument that the increase in the net present value of the host fees should suffice to allow the modification. It reasoned that because the Landfill is already in place the increase in value does not provide an incentive to municipalities to host

waste disposal facilities and that it had conceptual difficulty in viewing the faster payments as a benefit. However, to the extent that the fees represented a benefit it was cancelled out by local costs and inconveniences.

■■■ The EHB concluded that the Department complied with applicable procedural requirements in reviewing the permit application, that the Township received adequate notice and opportunity to comment and that the Department's review of the environmental assessment was consistent with applicable regulatory requirements. It noted that de novo review of the Department's action was limited to whether it was lawful, reasonable and appropriate. The EHB determined that there was no basis for the Department's finding that the benefits clearly outweighed the harms and therefore concluded that the modification could not stand under 25 Pa.Code § 271.127(c). The EHB, however, declined the Giordianos' request that it invalidate Petitioners' entire permit or that it make its ruling retroactive by decreasing future volume limits. The EHB noted that the Giordanos could have sought expedited review or supersedeas. The EHB ordered that the modification be rescinded and that the Landfill's average daily volume be set at 5,210 tons.[2]

### III

■■■ The Court's review of an order of the EHB is limited to determining wheth-

2. As an initial matter, Petitioners contend that the EHB erred in finding that the Giordanos and Robeson have standing to challenge the Department's issuance of the modification permit. To establish standing, parties must show that they have an interest in the outcome of the litigation that is substantial, direct and immediate. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). The Giordanos reside approximately two miles downwind of the

Landfill, and the EHB found that they have suffered increased malodors and a slight increase in litter and noise at their property as a result of the volume increase. Robeson is the municipality immediately adjacent to the host township, and the EHB found that its residents have suffered increased malodors and noise as a result of the volume increase. The EHB's findings are sufficient to support its conclusion that the Giordanos and Robeson have standing.

er the EHB's findings are supported by substantial evidence and whether constitutional violations or errors of law were committed. *Westinghouse Electric Corp. v. Department of Environmental Protection,* 745 A.2d 1277 (Pa.Cmwlth.2000). The EHB is an independent quasi-judicial agency that adjudicates environmental matters in the first instance. *Department of Environmental Protection v. North American Refractories Co.,* 791 A.2d 461 (Pa.Cmwlth.2002). As a quasi-judicial body, the EHB is not intended to play a policy-making role. *Id.* When the Department acts pursuant to a mandatory provision of a statute or regulation, the EHB must determine whether to uphold or to vacate the Department's action. *Warren Sand & Gravel Co., Inc. v. Department of Environmental Resources,* 20 Pa.Cmwlth. 186, 341 A.2d 556 (1975). When the Department acts with discretionary authority, the EHB must determine if the Department abused its discretion. *Pequea Township v. Herr,* 716 A.2d 678 (Pa.Cmwlth. 1998). Should the record demonstrate that the Department abused its discretion, the EHB may substitute its discretion for that of the Department. *Id.* In factual matters, the Court's role is limited to determining whether the EHB's findings are supported by substantial evidence in the record. *Westinghouse Electric Corp.; Pequea Township; Warren Sand & Gravel Co.*

■ Petitioners and the Department argue that the EHB erred as a matter of law in concluding that the increase in the net present value of the host fees paid to Berks County and New Morgan Borough did not constitute a benefit. The amended regulations at 25 Pa.Code § 271.127(c) provide the following guidance with regard

to what constitutes a benefit: "The benefits of the project shall consist of social and economic benefits that remain after taking into consideration the known and potential social and economic harms of the project and shall also consist of the environmental benefits of the project, if any." The Department's interpretation of this regulation is entitled to great deference so long as its interpretation is not clearly erroneous. *North American Refractories.* Moreover, the Court rejected a challenge to the validity of the foregoing regulation, and it recently held in *Tri–County Industries, Inc. v. Pennsylvania Department of Environmental Protection,* 818 A.2d 574 (Pa. Cmwlth. 2003), that economic and social considerations may be taken into account during the solid waste disposal permitting process.

■ The evidence before the EHB established that the faster payment of host fees would economically benefit Berks County and New Morgan Borough. Petitioners' expert testified that the net present value of the fees paid to New Morgan Borough would increase by $671,533 and that the net present value of the fees paid to Berks County would increase by $1,593,000. Thus the faster payment of host fees produces a combined increase of approximately $2.3 million. The EHB suggested, however, that the increase would not further the legislatively intended incentive to municipalities to host facilities, but it provided no statutory or case law authority. Moreover, the record contains no substantial evidence to support the EHB's findings that any benefits that may accrue from the increase in host fees would be cancelled out by local costs and inconveniences.[3] The Court, consequently,

---

3. The Court rejects the Giordanos' argument that increase in the present value of the host fees may not be considered a benefit to the public because the Department did not investigate how New Morgan Borough or Berks County would spend the increased funds. Re-

concludes that the EHB committed an error of law in determining that the increase in host fees did not represent an economic benefit that the Department could consider in its review of Petitioners' application.

■ The question then becomes whether the benefits to the public of the permit modification "clearly outweigh" the known or potential harms once the increase in the net present value of the host fees is properly considered as a benefit. The word "clearly" does not indicate a particular amount by which the benefits must outweigh the harms. The standard imposed by 25 Pa.Code § 271.127(c) may be met where the benefits to the public outweigh the harms by a mere scintilla so long as the applicant proves, with the requisite high degree of certainty, *see* Black's Law Dictionary 244 (7th ed.1999), that those benefits do outweigh the harms in the final balancing process. The Department properly conducted the harms/benefits analysis, and within its discretion the Department determined that the benefits from the modification outweighed the harms. There is no evidence of record to demonstrate that the Department abused its discretion, or otherwise erred, when it granted Petitioners' permit modification. *Pequea Township.*

In their cross-petition for review, the Giordanos contend that the EHB erred in failing to rescind the permit modification on the grounds that it is not administratively complete because the application process did not meet all of the procedural requirements added by the amended regulations. Specifically, the Department did not conduct the meeting with municipal officials required by 25 Pa.Code § 271.202(b)(1), and the environmental assessment did not evaluate potential impacts to local parks and airports required by 25 Pa.Code § 271.127(a).

■ The parties and the EHB agreed to apply the harms/benefits test in the amended regulations, and the Department did not err by failing to enforce any procedural requirements not in effect at the time of its action.[4] The EHB found that the Department gave notice to the appropriate municipal officials and that it adequately considered the known and potential harms of the modification. These findings are supported by substantial evidence in the record. *Westinghouse Electric Corp.* Accordingly, because the Court has concluded that the EHB erred in its review of the Department's decision to grant Petitioners' permit modification application, the EHB therefore erred in sustaining the Giordanos' appeal. Thus their cross-petition for review is dismissed. For the reasons discussed, the EHB's order is reversed, and the permit modification that the Department granted to Petitioners is reinstated.

Judge FRIEDMAN dissents.

---

quiring the Department to monitor the expenditure of public dollars would unnecessarily and improperly insert the Department into the affairs of other government entities. The Court also declines the Giordanos' invitation to examine the legitimacy of New Morgan Borough as a municipality.

4. Although procedural amendments may be retroactively applied to ongoing proceedings or to rights that inured before the amendments' adoption, none of the cases cited by the Giordanos support the proposition that an agency action taken pursuant to procedural requirements in effect at the time of the action should be invalidated where procedural amendments are enacted during the course of subsequent litigation. *See, e.g., Jaquay v. Workers' Compensation Appeal Board (Central Property Services),* 717 A.2d 1075 (Pa.Cmwlth. 1998) (discussing the retroactive application of procedural amendments).

Judge COHN concurs in the result only.

Judge LEAVITT concurs in the result only.

**ORDER**

AND NOW, this 13th day of March, 2003, the order of the Environmental Hearing Board is hereby reversed, and the permit modification granted by the Department of Environmental Protection is reinstated.